UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| -versus- | ) | CRIMINAL NO.: 2:22-cr-139 |
| | ) | |
| FREDRICK WENDELL MCCRAY, | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION TO REVEAL THE IDENTITY OF THE
CONFIDENTIAL RELIABLE INFORMANTS**

The Defendant, Fredrick Wendell McCray, by and through his undersigned attorney, respectfully moves this Honorable Court for the entry of an Order directing the Government forthwith to make inquiry and disclose all of the following within the possession, custody and control of the Government, or the existence of which is known, or by the exercise of due diligence could become known, to the Government:

1. As to the Confidential Reliable Informants, named or unnamed in the Indictment/Criminal Complaint, the Defendant specifically requests the following:

    a. His or her full name and current address;

    b. Any additional known or previous addresses;

    c. Any additional information which may be helpful in locating him or her;

    d. A general description as well as any identifying physical characteristics which may help to identify him or her.

2. The prior record of such witnesses or informants; whether or not such person had any outstanding charges against him or her at the time the information was given or any other

time and whether such person was a known drug user or addict.

3. What, if any, information the Federal Bureau of Investigation, Drug Enforcement Administration (DEA), the DEA Task Force and/or any other law enforcement division, has that qualifies these individuals as Confidential Reliable Informants.

4. The details of any agreement or exchange between the Government as represented by the Bureau of Alcohol Tobacco Firearms and Explosives, and/or any other law enforcement division, the Confidential Reliable Informants, and the disposition of any pending or outstanding charges that were pending at the time of the cooperation of the Confidential Reliable Informants.

5. Any and all consideration or promises of consideration given to or on behalf of the witnesses or informants, or expected or hoped for by the witnesses or informants. By "consideration" the Defendant refers to absolutely anything, whether bargained for or not, which arguably could be a value or use to a witness or informant or to persons of concern to the witness or informant, including but not limited to, criminal, civil or tax immunity grants, relief from forfeiture, assistance or favorable treatment or recommendations with respect to any criminal, civil, tax court, court of claims, administration or other legal dispute with the government or any other parties, payments of money or fees, witness or informant fees and special witness or informant fees, provisions of food, clothing, shelter, transportation, or other like benefits; placement in a "witness or informant protection program," and anything else which arguably could reveal an interest, motive or bias in the witness in favor of the government or against the defense or act as an inducement to testify or to color testimony.

6. Any and all threats, expressed or implied, made against the witnesses or informants, criminal prosecutions, investigations, or potential prosecutions pending or which could be brought against the witnesses or informants, any probationary, parole or deferred prosecution status of

witness, any civil, tax court, court of claims, administrative or other pending or potential legal disputes or transactions with the Government.

7. The existence and identification of each occasion on which the witnesses, who are informers, accomplices, co-conspirators, or experts, have testified before any court, grand jury or other tribunal or body.

8. Any and all personnel files for the witnesses or informants and the existence and identity of all Government files for the witnesses or informants.

9. Any and all records and/or information which arguably could be helpful or useful to the defense in impeaching or otherwise detracting from the probative force of the Government's evidence or which arguably could lead to such records or information.

## MEMORANDUM OF LAW

I. INTRODUCTION

Defendant is moving for disclosure of the identity of the Confidential Reliable Informants as well as disclosure of "impeaching information." This raises the questions: Why must the Government disclose? When must the disclosure occur? What must be disclosed?

A. The Duty of Disclosure

To begin with, due process requires that the Government not suppress evidence favorable to the accused or discrediting to its own case and, upon request, that it disclose to the defense all such information. Brady v. Maryland, 373 U.S. 83 (1963). See also, Mooney v. Holohan, 294 U.S. 103 (1935); Pyle v. Kansas, 317 U.S. 213 (1942). This requirement of candor by the sovereign encompasses information which bears upon the credibility of its witnesses as well as matters more directly material to guilt or innocence. Napue v. Illinois, 360 U.S. 264 (1959); Gigilo v. United States, 405 U.S. 105 (1972). See, generally, Williams v. Dutton, 400 F.2d 787

(5th Cir. 1968), cert. denied 393 U.S. 1105 (1969). As stated by the Supreme Court in Napue v. Illinois, supra, 360 U.S. at 269:

> The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such factors as the possible interest of the witness testifying falsely that a defendant's life or liberty may depend.

Moreover, in this prosecution, the Court's supervisory power to safeguard "the correct administration of justice in the federal courts" reinforces the due process requirement of disclosure, e.g., United States v. Consolidated Laundries Corp., 291 F.2d 563, 571 (2d Cir. 1961); United States v. Miller, 411 F.2d 825 (2d Cir. 1969). See, generally, Communist Party of the United States v. S.A.C.B., 351 U.S. 115, 124 (1956).

B. Disclosure is Necessary Forthwith

Secondly, disclosure of information impeaching witnesses' credibility must be timely to enable effective preparation for trial. United States v. Polisi, 416 F.2d 573, 578 (2d Cir. 1969); United States v. Baxter, 492 F.2d 150, 1973-1974 (9th Cir. 1973), cert. denied, 417 U.S. 940 (1974). See, United States v. Opager, 589 F.2d 799 (5th Cir. 1979). As pointed out in United States v. Pollack, 534 F.2d 964, 973 (D.C. Cir. 1976) (Lumbard, J. sitting by designation):

> Disclosure by the State must be made at such a time as to allow the defense to use the favorable material effectively in preparation of the presentation of its case, even if satisfaction of this criterion requires pre-trial disclosure. See, e.g. United States v. Elmore, 423 F.2d 775 (4th Cir. 1970); United States v. Deustsch, 373 F. Supp. 289, 290-291 (S.D.NY 1974).

The Defendant, by his Motion seeks meaningful preparation for cross-examination and, if necessary, for the preparation of defense evidence. He offers avoidance of both the trial conundrums arising from <u>Brady</u> too little, <u>Brady</u> too late, as well as the specter of collateral attacks arising from the same. Pre-trial disclosure should be required in the interest of justice.

    C.    The Scope of Impeachment

Then, we must answer the question of what disclosure is in order. Wigmore has defined the process of impeaching testimonial evidence as the general logical process of explaining or discrediting the assertions of a witness by reference to the "human element in [the] testimony":

> But A's assertion that a street lamp was slighted at a given time or place generally of a piece with hundreds of thousands of former evidential data, vis-a-vis it is human assertion, resting for credit on human qualities. The human element in this testimony is an element in common, running through the vast mass of prior human testimonies. And even though human beings differ, yet their differences also are more generic, each on a vast scale. Moral character, bias, experience, powers of perception in light and dark, powers of memory after a lapse of time, susceptibility to falsify under torture--these and other qualities have been under observation in so many thousands of instances under varying conditions that we have built up generalizations (more or less correct or uniform), which passed for general truths (or at least as working guides) on those subjects. In short, we possess a <u>fund of general principals</u>, applicable to specific instances of this class of

evidence, and almost totally lacking specific circumstantial evidence.

3 Wigmore <u>Evidence</u> Section 587 at 362-363 (Ed. 1940) (emphasis in original).

Thus, we are concerned with these "general principals" of crediting witnesses. McCormick has identified "five main lines of attack upon the credibility of a witness":

There are five main lines of attack upon the credibility of a witness. The first, and probably the most effective and most frequently employed, is an attack of proof that the witness on a previous occasion has made statements inconsistent with his present testimony. The second is an attack by showing that the witness is biased on account of emotional influences such as kinship for one party or hostility to another, or motives of pecuniary interest; whether legitimate or corrupt. The third is an attack upon the character of the witness. The fourth is an attack by showing defeat of capacity in the witness to observe, remember or recount the matters testified about. The fifth is proof by other witnesses that material facts are otherwise than testified to by the witnesses under attack.

McCormick, <u>Evidence</u>, Section 33 at 66 (2d Ed. 1972).

As can be seen, impeachment is not limited to discrediting character for veracity. 3 Wigmore, <u>Evidence</u>, Section 874 at 362 n.1 (3d Ed. 1940). Nor is the process limited to cross-

examination. Extrinsic evidence showing bias, for example, may be elicited. E.G., Johnson v. Brewer, 521 F.2d 556, 562 & n.13 (8th Cir. 1975).

II. CONCLUSION

The right of counsel for the accused to confront, cross-examine and impeach is cherished and remains "the principle means by which the believability of a witness and the truth of his testimony are tested." Davis v. Alaska, 415 U.S. 308, 316 (1974) (Burger, C. J.). Our specific requests for impeaching information are highly material to defense counsel's investigation and preparation for precisely this venerable mission. See, generally, United States v. Opager, 589 F.2d 788 (5th Cir. 1979). Therefore, the Constitution requires for the prosecution to disclose it or to show good cause why not. United States v. Agurs, 427 U.S. 97, 106 (1976); Brady v. Maryland, 373 U.S. 83 (1963).

An application of these fundamental precepts requires, I submit, that the accused's Motion be granted.

<div style="margin-left: 40%;">

Respectfully submitted,

WILLIAMS & WALSH, LLC
652 Rutledge Ave., Unit B
Charleston, SC 29403
Tel: 843-722-0157
Fax: 843-762-2198
abigail@williamsandwalshlaw.com

*s/Abigail B. Walsh*
Abigail B. Walsh (Fed. ID #09528)
***Attorney for Defendant***

</div>

Charleston, South Carolina
March 2, 2022