IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION


UNITED STATES OF AMERICA,           )
                                    )      October 30, 2024
                                    )
          -versus-                  )      Charleston, SC
                                    )
ANGEL JOAQUIN DANIEL FLORES,        )      2:22-139-15
                                    )
          Defendant.                )


TRANSCRIPT OF CHANGE OF PLEA

BEFORE THE HONORABLE BRUCE HOWE HENDRICKS
UNITED STATES DISTRICT JUDGE, presiding


A P P E A R A N C E S:

For the Government:    CHRISTOPHER S. LIETZOW, AUSA
                       US Attorney's Office
                       151 Meeting Street, Suite 200
                       Charleston, SC 29401


For the Defendant:     DAVID P. MCCANN, ESQ.
                       PO Box 2344
                       Mt. Pleasant, SC 29465


Court Reporter:        KAREN E. MARTIN, RMR, CRR
                       PO Box 835
                       Charleston, SC 29402


Proceedings reported by stenographic court reporter.
Transcript produced with computer-aided transcription
software.

1          Wednesday, October 30, 2024

2     (WHEREUPON, court was called to order at 10:31 AM)

3          **THE COURT:**  Thank you.  Take your seats, please.

4          Okay.  Mr. US Attorney, you may call the case.

5          **MR. LIETZOW:**  This is United States vs. Angel

6     Flores.  It's Case No. 2:22-139-15.  Mr. Flores is

7     represented by Mr. David McCann.  We're before Your Honor

8     for a change of plea.  Mr. Flores is pleading guilty to

9     Count 1 of the second superseding indictment which charges

10    him with conspiracy to possess with intent to distribute

11    and distribute 500 or more grams of meth and a quantity of

12    marijuana.

13         **THE COURT:**  Okay.  Does he need an interpreter?

14         **MR. McCANN:**  No, he does not, Your Honor.

15         **THE COURT:**  Okay.  And is this with a plea

16    agreement or without a plea agreement?

17         **MR. McCANN:**  With a plea agreement, Your Honor.

18    It's been filed.

19         **THE COURT:**  And it's not an 11(c)(1)(C)?

20         **MR. LIETZOW:**  It is an 11(c)(1)(C).

21         **THE COURT:**  Okay.  All right.  Thanks.

22         And let's swear in Mr. Flores.

23         **THE CLERK:**  Yes, ma'am.

24         Please stand, sir.

25    (WHEREUPON, the defendant was sworn.)

1          **THE DEFENDANT:**  Yes, ma'am.

2          **THE CLERK:**  Thank you.

3          **THE COURT:**  Okay.  Mr. McCann, have you been

4    able to communicate just fine with Mr. Flores?

5          **MR. McCANN:**  I have, Your Honor.

6          **THE COURT:**  And have you explained to him the

7    charge or charges contained in the indictment and the

8    possible punishment and his constitutional rights?

9          **MR. McCANN:**  Yes, I have.

10          **THE COURT:**  In your opinion, does he understand

11   the charges and punishment and his right to a jury trial?

12          **MR. McCANN:**  Yes, he does.

13          **THE COURT:**  And how does he indicate to you he

14   wishes to plead, guilty or not guilty?

15          **MR. McCANN:**  He wishes to plead guilty to Count

16   1 of the indictment, Your Honor.

17          **THE COURT:**  And you agree with that decision

18   yourself?

19          **MR. McCANN:**  Yes.

20          **THE COURT:**  From your own investigation,

21   Mr. McCann, of the facts and circumstances of this case,

22   do you feel that the Government could produce sufficient

23   evidence to convince a jury of his guilt and that if he

24   were to go to trial that his guilt would be probable?

25          **MR. McCANN:**  Yes, I do.

1          THE COURT:  Has he been ordered to submit to a
2    mental examination?

3          MR. McCANN:  No, he has not.

4          THE COURT:  And do you have any doubt as to his
5    competence to plead?

6          MR. McCANN:  None.

7          THE COURT:  So, Mr. Flores, you're now under
8    oath.  And if you answer any of my questions falsely, your
9    answers may later be used against you in another
10   prosecution for perjury or for making a false statement.
11   Do you understand?

12         THE DEFENDANT:  Yes, ma'am.

13         THE COURT:  You're able to understand and speak
14   the English language it looks like?

15         THE DEFENDANT:  Yes, ma'am.

16         THE COURT:  Okay.  So I've been informed that
17   you wish to plead guilty, is that true?

18         THE DEFENDANT:  Yes, ma'am.

19         THE COURT:  But before I can accept that plea,
20   I've got to make sure that your plea is made freely and
21   voluntarily so I am going to ask you some questions.  If
22   you don't understand one of my questions, just let me know
23   and I'll repeat it.  If you need to stop and talk to your
24   lawyer privately and confidentially about anything, just
25   let me know and I'll let y'all have a time out.  Okay?

1          THE DEFENDANT:  Um-hmm.

2          THE COURT:  So how old are you?

3          THE DEFENDANT:  I'm 34.

4          THE COURT:  Where were you born?

5          THE DEFENDANT:  In Turlock, California.

6          THE COURT:  How far did you go in school?

7          THE DEFENDANT:  Tenth grade.

8          THE COURT:  What was the last job you had?

9          THE DEFENDANT:  I worked at a -- it was like in

10   a packing company in Antigua.

11          THE COURT:  Have you ever been treated for

12   alcohol abuse or drug abuse or a mental illness?

13          THE DEFENDANT:  No, ma'am.

14          THE COURT:  Have you taken any kind of medicine,

15   drugs, or alcohol in the last 24 hours?

16          THE DEFENDANT:  I'm diabetic.  I took insulin.

17   Metformin.

18          THE COURT:  Are you aware of any physical,

19   emotional, or nervous problem that might keep you from

20   understanding what you're doing?

21          THE DEFENDANT:  No.

22          THE COURT:  Do you understand that you're

23   pleading guilty?

24          THE DEFENDANT:  Yes, ma'am.

25          THE COURT:  And Mr. McCann, do you agree that

1  your client knows and understand what is he's doing this

2  morning?

3          MR. McCANN:  I do believe that, Your Honor.

4          THE COURT:  It appears to me that Mr. Flores is

5  competent to plead to the charges and I so find now for

6  purposes of the record.

7          Are you satisfied with the way that your lawyer,

8  Mr. McCann, has advised you and represented you?

9          THE DEFENDANT:  Yes, ma'am.

10         THE COURT:  Have you talked to him for as often

11 and as long as you felt it was necessary for him to

12 represent you?

13         THE DEFENDANT:  Yes, ma'am.

14         THE COURT:  Do you need anymore time to talk to

15 him this morning?

16         THE DEFENDANT:  No.

17         THE COURT:  Have you understood all the talks

18 and conversations that you've had with Mr. McCann?

19         THE DEFENDANT:  Yes, ma'am.

20         THE COURT:  Has he done everything for you that

21 you've asked him to do?

22         THE DEFENDANT:  Yes, ma'am.

23         THE COURT:  Has he failed to do anything you

24 asked him to do?

25         THE DEFENDANT:  No.

1    THE COURT:  Are you completely satisfied with

2  your lawyer's services?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  Do you have any complaint at all

5  that you want to make to the Court about your lawyer?

6          THE DEFENDANT:  No.

7          THE COURT:  So, Mr. Flores, under the

8  constitution and laws of the United States, you've got a

9  right to plead not guilty.  If you plead not guilty,

10  you're entitled to a trial by a jury during which you'd

11  have the right to the assistance of your lawyer for your

12  defense on the charges contained in the indictment.  Do

13  you understand?

14          THE DEFENDANT:  Yes.

15          THE COURT:  If you were to go to trial, you'd be

16  presumed to be innocent.  And the Government would be

17  required to prove you guilty by competent evidence and

18  beyond a reasonable doubt before you could be found

19  guilty.  And you wouldn't have to prove that you were

20  innocent.  Do you understand?

21          THE DEFENDANT:  Yes, ma'am.

22          THE COURT:  So in the course of a trial, the

23  witnesses for the Government would have to come into court

24  and testify in your presence.  And your lawyer could

25  cross-examine those prosecutor witnesses, object to

1    evidence offered by the prosecution, and offer evidence

2    for you on your behalf.  Do you understand?

3              THE DEFENDANT:  Yes, ma'am.

4              THE COURT:  At a trial, while you'd have the

5    right to testify if you chose to do so, you'd also have

6    the right not to testify.  And no inference or suggestion

7    of guilt could be drawn from the fact that you chose not

8    to testify.  Do you understand?

9              THE DEFENDANT:  Yes, ma'am.

10             THE COURT:  At a trial you'd have the right to

11   the issuance of subpoenas or compulsory process to compel

12   the attendance of witnesses to come into court and testify

13   in your defense.  Do you understand?

14             THE DEFENDANT:  Yes, ma'am.

15             THE COURT:  If you plead guilty and I accept

16   your plea, you'll waive your right to that jury trial and

17   the other rights I've discussed.  There won't be a trial

18   and I'll enter a judgment of guilty and sentence you on

19   the basis of your guilty plea after considering a

20   Presentence Report.  Do you understand?

21             THE DEFENDANT:  Yes, ma'am.

22             THE COURT:  If you plead guilty and I accept

23   your plea, you'll also have to give up your right not to

24   incriminate yourself since I'm going to ask you questions

25   about what you did in order to satisfy myself that you're

1  guilty as charged.  And you'll have to admit your guilt

2  here in open court.  Do you understand?

3       **THE DEFENDANT:**  Yes, ma'am.

4       **THE COURT:**  You may have given an incriminating

5  statement in this case.  If you plead guilty, you waive or

6  give up the right to contest or challenge whether any such

7  statement was freely and voluntarily given in accordance

8  with all your constitutional rights.  Do you understand?

9       **THE DEFENDANT:**  Yes.

10       **THE COURT:**  You may have a defense to the

11  charges against you.  Do you understand that if you plead

12  guilty, you waive or give up any defense to the charges?

13       **THE DEFENDANT:**  Yes.

14       **THE COURT:**  Is restitution an issue in this

15  case, Mr. US Attorney?

16       **MR. LIETZOW:**  We're not seeking a specific

17  monetary amount, it's just the general language found in

18  the drug statutes.

19       **THE COURT:**  Okay.  All right.

20       Are you on probation or parole for anything

21  else?

22       **THE DEFENDANT:**  No, ma'am.

23       **THE COURT:**  Okay.  Do you understand that when

24  you plead guilty, you admit the truth of the charge that's

25  made against you?

1          **THE DEFENDANT:** Yes, ma'am.

2          **THE COURT:** Now that I've discussed your rights

3 with you, do you still want to plead guilty?

4          **THE DEFENDANT:** Yes, ma'am.

5          **THE COURT:** So the offense or offenses to which

6 you're pleading guilty are felony offenses. If your plea

7 is accepted, you'll be adjudged guilty of that offense.

8 And such adjudication may deprive you of valuable civil

9 rights, such as the right to vote, right to hold public

10 office, right to possess any kind of firearm or even a

11 single piece of ammunition. Do you understand?

12          **THE DEFENDANT:** Yes, ma'am.

13          **THE COURT:** If you're not a citizen of the

14 United States, in addition to the other possible penalties

15 you're facing, a plea of guilty may subject you to

16 deportation, exclusion, or voluntary departure and prevent

17 you from obtaining US citizenship. Do you understand?

18          **THE DEFENDANT:** Yes, ma'am.

19          **THE COURT:** If the offense carries a maximum of

20 20 years or more, a probationary sentence is unavailable

21 under 18 USC 3561. Do you understand that?

22          **THE DEFENDANT:** Yes, ma'am.

23          **THE COURT:** If it's applicable, you may be

24 required to forfeit certain property to the Government.

25 Do you understand?

1    THE DEFENDANT:  Yes, ma'am.

2    THE COURT:  If you plead guilty, I've got to

3 determine the appropriate sentence to be imposed.  Under

4 the Sentencing Reform Act, the Sentencing Commission has

5 issued guidelines for judges to follow in determining

6 sentences.  I've got to consider the statutory factors

7 under 3553(a) as well as the advisory guidelines.  Have

8 you and Mr. McCann talked about how the statutory factors

9 in the guidelines might affect your sentence?

10    THE DEFENDANT:  Yes, ma'am.

11    THE COURT:  I'm not even going to be able to

12 determine the guideline sentence for your case until after

13 a Presentence Report has been done and both you and the

14 Government have had a chance to read the Presentence

15 Report and object to it.  Do you understand?

16    THE DEFENDANT:  Yes.

17    THE COURT:  So I guess relevant conduct could be

18 an issue, correct, Mr. US Attorney?

19    MR. LIETZOW:  Your Honor, it could so far as it

20 could affect the guidelines.  But just to reiterate, if

21 Your Honor accepts the 11(c)(1)(C), I think it would be a

22 moot point.

23    THE COURT:  Yeah.  Okay.  I'll go over the idea

24 of relevant conduct just out of an abundance of caution,

25 but I understand that it's an 11(c)(1)(C).  I usually

1    defer my final acceptance until the date of the

2    sentencing.  But I'll explain that as we go through it.

3         So I'm going to go over something called

4    relevant conduct with you.  That means you could be held

5    accountable for criminal conduct in which you were

6    directly involved in preparation for, during, or in the

7    course of attempting to avoid responsibility for the

8    offense with which you've been charged.  It also means

9    that where you've been involved in any jointly undertaken

10   criminal activity with other people, you'll be held

11   accountable for the conduct of the other people if it was

12   both in furtherance of your jointly undertaken activity

13   and reasonably foreseeable in connection with that

14   criminal activity.  Do you understand?

15        **THE DEFENDANT:**  Yes.

16        **THE COURT:**  Have you discussed the idea of

17   relevant conduct with Mr. McCann?

18        **THE DEFENDANT:**  Yes.

19        **THE COURT:**  After it's been determined what

20   guidelines do apply, I've got the authority in some

21   circumstances to impose a sentence that's either more

22   severe or less severe than that called for by the

23   guidelines.  Do you understand?

24        **THE DEFENDANT:**  Yes, ma'am.

25        **THE COURT:**  Under some circumstances, you or the

1  Government may have a right to appeal any sentence I might

2  impose.  Do you understand?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  So parole has been abolished.  If

5  you're sentenced to prison, you will not be released on

6  parole.  Do you understand?

7          THE DEFENDANT:  Yes, ma'am.

8          THE COURT:  Under the Sentencing Reform Act, the

9  Court may order a term of supervised release to follow

10 imprisonment in any kind of case.  But the Court must

11 order supervised release following imprisonment if a

12 sentence of more than one year is imposed or if it's

13 required by the statute.  Do you understand?

14         THE DEFENDANT:  Yes, ma'am.

15         THE COURT:  So when you're on supervised

16 release, you're restricted as to the places you might go

17 and the things you might do and you must report to the

18 authorities on a regular basis.  Do you understand?

19         THE DEFENDANT:  Yes, ma'am.

20         THE COURT:  If you violate any term or condition

21 of supervised release, you could be given more time in

22 prison.  Do you understand?

23         THE DEFENDANT:  Yes, ma'am.

24         THE COURT:  So you've heard your lawyer tell me

25 that he's explained to you the charges against you, he's

1   told you about the possible punishment and explained all

2   your rights, your constitutional rights, and he says that

3   you understand all those things.  Is that true?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  Do you understand what's going on

6   right now?

7          THE DEFENDANT:  Yes, ma'am.

8          THE COURT:  Have you received a copy of the

9   indictment, which is the written charges made against you?

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  Have you discussed with Mr. McCann

12   the charges in the indictment?

13          THE DEFENDANT:  Yes, ma'am.

14          THE COURT:  And the whole case in general?

15          THE DEFENDANT:  Yes, ma'am.

16          THE COURT:  Okay.  So have you told Mr. McCann

17   everything you know about your case?

18          THE DEFENDANT:  Yes, ma'am.

19          THE COURT:  All right.  I'd ask Mr. US Attorney

20   to summarize the indictment and give us the elements and

21   the penalties.

22          MR. LIETZOW:  Your Honor, Mr. Flores is pleading

23   guilty to the first count of the second superseding

24   indictment that charges Mr. Flores with conspiracy to

25   possess with intent to distribute and distribution of

1    500 grams or more of methamphetamine and a quantity of

2    marijuana.

3         The elements of that offense, Your Honor, are

4    that, one, there was an agreement between two or more

5    persons to knowingly, intentionally, and unlawfully

6    possess with intent to distribute and distribute 500 grams

7    or more of a mixture or substance containing a detectable

8    amount of methamphetamine and a quantity of marijuana.

9    The second element is that the defendant knew of this

10   agreement or conspiracy. And the third element is that

11   the defendant knowingly and voluntarily participated in or

12   became part of this agreement or conspiracy.

13        That carries a mandatory minimum of ten years

14   and a maximum of life in prison, a $10 million fine, five

15   years of supervised release, and a $100 special assessment

16   for the methamphetamine portion. And it carries a maximum

17   term of five years in prison, $250,000 fine, two years of

18   supervised release, and a $100 special assessment for the

19   marijuana provision of that statute.

20        **THE COURT:** Okay.

21        Mr. Flores, do you understand the nature of the

22   charges against you and the range of possible punishment?

23        **THE DEFENDANT:** Yes, ma'am.

24        **THE COURT:** Do you still want to plead guilty?

25        **THE DEFENDANT:** Yes, ma'am.

1     **THE COURT:**  Did you commit this offense?

2     **THE DEFENDANT:**  Yes, ma'am.

3     **THE COURT:**  I find the defendant fully

4 comprehends and understands the nature of the charges

5 against him and generally what elements the Government

6 would have to prove if a trial were held.

7     So I know there's a plea agreement.  And I'd ask

8 Mr. US Attorney to go ahead and summarize that plea

9 agreement.

10     **MR. LIETZOW:**  Thank you, Judge.  The first

11 paragraph of the plea agreement discusses what I just put

12 on the record, which is the charges Mr. Flores is pleading

13 to, the elements, and the penalties associated.

14     The second paragraph details the monetary

15 penalties, such as special assessments, restitutions,

16 fines, and other payments that are due and payable

17 immediately.

18     The third paragraph indicates that provided

19 Mr. Flores complies with all the terms of the plea

20 agreement, the Government will move to dismiss the

21 remaining counts of the indictment at sentencing.  It also

22 details that Mr. Flores is aware that relevant conduct of

23 the dismissed counts could affect the sentencing

24 guidelines.

25     Paragraph 4 indicates that Mr. Flores

1   understands that the Government's obligations are

2   contingent on Mr. Flores continuing to abide by federal

3   and state laws and the terms of his release agreement,

4   which is not relevant at this point.

5           Paragraph 5 states that Mr. Flores will

6   voluntarily surrender to and not contest the forfeiture of

7   any and all assets and property that could become relevant

8   as part of the sentencing.

9           Paragraph 6, Your Honor, is the 11(c)(1)(C)

10  provision.  And that states that if Mr. Flores complies

11  with the terms of the plea agreement, that he and the

12  Government agree that a sentence of 120 months is an

13  appropriate disposition of the outcome of this case.

14  Granted, Your Honor, the Government and Mr. Flores'

15  counsel I know understand that that is reliant on whether

16  Your Honor would accept that or not.  And we understand

17  that you will withhold judgment until the Presentence

18  Report has been prepared and will not know what you're

19  going to do until the time of sentencing.

20          **THE COURT:**  What paragraph was that again?

21          **MR. LIETZOW:**  Paragraph 6, Your Honor.

22          **THE COURT:**  And how many months was it?

23          **MR. LIETZOW:**  120.

24          **THE COURT:**  Okay.

25          **MR. LIETZOW:**  That's Page 7, Paragraph 6.

1          **THE COURT:**  Okay.  Thank you.

2          **MR. LIETZOW:**  And I think it's also important to

3    note for the record that if Your Honor were not to go

4    along with that or disagree that that's an appropriate

5    resolution, that the parties could back out of this plea

6    agreement and come back to the table to renegotiate a more

7    appropriate resolution.

8          Paragraph 7 is a non-prosecution agreement.  And

9    that states that the attorneys for the Government agree

10   that Mr. Flores will not be federally prosecuted in the

11   Eastern District of California for evidence obtained by

12   the Stanislas County Special Investigations Unit on

13   May 23rd, 2023, during the search of a residence

14   associated with the defendant so long as the defendant

15   complies with the terms of this plea agreement.

16         Paragraph 8 is the effective assistance

17   paragraph, Your Honor.  And this indicates, as Mr. Flores

18   has already stated on the record, that he is satisfied

19   with the performance of counsel.  And that he has met with

20   Mr. McCann on a sufficient number of basis to fully make

21   an informed decision today here in court.

22         Paragraph 9 is the limited appellate waiver,

23   Your Honor.  And that indicates that Mr. Flores knows that

24   he has certain rights to appeal the conviction and/or

25   sentence, but he is giving up the ability to do that based

1   on this plea agreement.  But he also understands that that

2   does not apply to claims of ineffective assistance of

3   counsel, prosecutorial misconduct, or future changes in

4   the law that may affect Mr. Flores' sentence.

5          Paragraph 10, Mr. Flores is essentially waiving

6   his rights to receive records associated with this case.

7          And Paragraph 11 states that this written

8   agreement that all parties have signed is the entire

9   agreement, supersedes all preceding agreements, and

10  there's no secret or separate side agreements between the

11  parties.

12          THE COURT:  So, Mr. McCann, you have a copy of

13  it?

14          MR. McCANN:  I do, Your Honor.

15          THE COURT:  And Mr. Flores, is the document

16  Mr. McCann has, is that the plea agreement you entered

17  into in this case?  And is that the agreement that you

18  signed?

19          THE DEFENDANT:  Yes, ma'am.

20          THE COURT:  Have you read it?

21          THE DEFENDANT:  Yes, ma'am.

22          THE COURT:  Do you understand all of it?

23          THE DEFENDANT:  Yes, ma'am, I do.

24          THE COURT:  Did you discuss it with Mr. McCann

25  fully before you signed it?

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  Does it set out your entire

3    agreement with the US Government concerning the pending

4    charges?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  So with regard to the Rule

7    11(c)(1)(C) stipulated sentence of 120 months to be

8    followed by the appropriate statutory term of supervised

9    release, have you discussed that fully with your lawyer?

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  And you discussed all of these

12    provisions fully with Mr. McCann?

13          THE DEFENDANT:  Yes, ma'am.

14          THE COURT:  And you entered into the Rule

15    11(c)(1)(C) agreement freely and voluntarily; is that

16    correct?

17          THE DEFENDANT:  Yes, ma'am.

18          THE COURT:  So how I handle 11(c)(1)(C)

19    stipulated sentences or provisions, as Mr. US Attorney

20    said, I defer my final decision on acceptance or rejection

21    of the plea agreement until I've had a chance to read your

22    Presentence Report.  If I should reject the plea

23    agreement, I would allow you to withdraw your plea.  If

24    you do not withdraw your plea, I could impose a more

25    severe sentence without being bound by the plea agreement.

1 Do you understand?

2         **THE DEFENDANT:** Yes, ma'am.

3         **THE COURT:** Do you understand that parole has

4 been abolished. And if you're sentenced in accordance

5 with your plea agreement, you won't be released on parole?

6         **THE DEFENDANT:** Yes, ma'am.

7         **THE COURT:** So I also need to say that in the

8 plea agreement you signed, Paragraph 6 says you're aware

9 that 18 USC 3742 and 28 USC 2255 afford every defendant

10 certain rights to contest a conviction or a sentence. You

11 have acknowledged those rights, and in exchange for the

12 concessions made to you by the Government in the plea

13 agreement, you waive the right to contest either the

14 conviction or the sentence in any direct appeal or other

15 post-conviction action, including under 2255. But the

16 waiver does not apply to claims of ineffective assistance

17 of counsel or prosecutorial misconduct that could be

18 raised under 2255 or future changes in the law that might

19 affect your sentence. Are you aware that you're waiving

20 all those rights?

21         **THE DEFENDANT:** Yes, ma'am.

22         **THE COURT:** Has anyone promised you what

23 sentence you will receive?

24         **THE DEFENDANT:** Um, just the plea agreement that

25 I got.

1        THE COURT:  Right.  Nobody else has promised you

2   for sure exactly what you're going to get?

3        THE DEFENDANT:  No.

4        THE COURT:  You still want to plead guilty?

5        THE DEFENDANT:  Yes, ma'am.

6        THE COURT:  Other than the plea agreement, other

7   than the plea agreement, has anyone promised you anything

8   or held out any hope of a reward to get you to plead

9   guilty?

10       THE DEFENDANT:  No, ma'am.

11       THE COURT:  Has anyone threatened you or

12  pressured you, intimidated you or used force to get you to

13  plead guilty?

14       THE DEFENDANT:  No, ma'am.

15       THE COURT:  Have you had enough time to decide

16  whether or not you do want to plead guilty?

17       THE DEFENDANT:  Yes, ma'am.

18       THE COURT:  Are you pleading guilty of your own

19  free will and accord?

20       THE DEFENDANT:  Yes, ma'am.

21       THE COURT:  I'd ask Mr. US Attorney to summarize

22  the evidence for us.

23       MR. LIETZOW:  Judge, Mr. Flores was intercepted

24  during a Title III wire investigation that began in 2020

25  and spanned into 2022.  Mr. Flores was associated with a

drug trafficking organization that was mainly operating in the Ten Mile area of North Charleston but also throughout all of Charleston County.

Subsequent to Mr. Flores being intercepted on a recorded phone call, investigators learned that Mr. Flores lived in California and identified him as a source of supply for one of the main drug distributors in that organization who is named LaJustin Williams. Cooperators advised law enforcement that Flores was shipping numerous pounds of meth and marijuana to Mr. Williams, who was then partnering with another member of the drug trafficking organization named Tyrone Peterson to sell it locally here in Charleston and other places.

On one specific occasion, Your Honor, Mr. Williams and Mr. Peterson concocted a scheme where they were going to send marijuana and meth to Kuwait overseas. They felt as though they would have a higher return on their investment by selling it where there was higher profit margins. So they sourced that marijuana and that methamphetamine through Mr. Flores.

And they then took the meth and marijuana that Mr. Flores provided them, packaged it up, and then did send it to Kuwait. Unfortunately for them, that package was intercepted by law enforcement and it was found to contain 1,739 grams of meth and 441 grams of marijuana.

1   Those substances were lab confirmed to be controlled

2   substances and weigh the weight that I stated.

3           Once that package was intercepted, cooperators

4   confirmed that Mr. Flores did provide those drugs.  And

5   phone calls that were intercepted between Mr. Flores and

6   Mr. Williams indicated that they did have a relationship

7   that was centered around narcotics trafficking.

8           In one intercepted phone call, they discussed --

9   they being Mr. Flores and Mr. Williams discussed that

10  Mr. Williams needed approximately 8 pounds of

11  methamphetamine from Mr. Flores so that he could send it

12  to his people overseas.  Mr. Flores indicated that he

13  would need to source that from somebody else and indicated

14  that he did not have the money personally to front that

15  and he would need other people to buy in to that agreement

16  in order to be able to provide Mr. Williams with that much

17  methamphetamine.

18          So between the cooperator statements and the

19  phone calls that were intercepted, investigators were able

20  to determine and corroborate that Mr. Flores was providing

21  local individuals with meth and marijuana.

22          I will say though -- I will also say that the

23  number Mr. Flores was intercepted on, investigators served

24  a subpoena to that phone company and that number was

25  confirmed to belong to Mr. Flores.  So that's part of how

1    they were able to identify Mr. Flores.

2           Mr. Williams, the cooperator, also allowed

3    investigators to search his phone.  And they observed

4    several messages between Mr. Flores and Mr. Williams

5    further corroborating that they had this illegal agreement

6    to distribute narcotics.

7           And Mr. Flores was stopped in Oklahoma and

8    searched in a separate incident.  Law enforcement out in

9    Oklahoma was able to recover a phone.  And that was the

10   phone Mr. Flores was using to communicate with

11   Mr. Williams.  And they did a search of that phone and

12   further corroborated the relationship between the two

13   parties.

14           In total, Mr. Flores is alleged to have provided

15   4.8 kilos of methamphetamine and an unknown total quantity

16   of marijuana.

17           There was also a May 23rd, 2023, search on

18   Mr. Flores' residence in California that may be considered

19   relevant conduct.  But as we've stated on the record, that

20   relevant conduct may or may not be applicable based on

21   whether Your Honor accepts the 11(c)(1)(C).

22           **THE COURT:**  So, Mr. Flores, do you agree with

23   the prosecutor's summary of what you did?

24           **THE DEFENDANT:**  Yes, ma'am.

25           **THE COURT:**  Do you have any questions for him

1  before we go on?

2       THE DEFENDANT:  No, ma'am.

3       THE COURT:  Have you understood all my

4  questions?

5       THE DEFENDANT:  Yes, ma'am.

6       THE COURT:  Is there anything you want to ask me

7  before we go on?

8       THE DEFENDANT:  No, ma'am.

9       THE COURT:  How do you wish to plead?

10      THE DEFENDANT:  Guilty.

11      THE COURT:  Are you guilty?

12      THE DEFENDANT:  Yes, ma'am.

13      THE COURT:  It is the finding of the Court in

14 the United States vs. Daniel Flores that the defendant is

15 fully competent and capable of entering an informed plea.

16 And his plea is a knowing and voluntary plea supported by

17 an independent basis in fact containing each of the

18 essential elements of the offense.  So the plea is not

19 quite accepted.  And the plea is -- will be ultimately

20 accepted possibly at the time of sentencing.  But it's

21 accepted for purposes of today.

22      So it looks like you're detained.  But let me

23 just say a written Presentence Report will be prepared by

24 the US Probation Office to assist me at sentencing.  And

25 you're going to be asked to give information for that

1   report.  Your lawyer can be present during questioning by

2   probation if you wish.  And y'all will be able to read the

3   Presentence Report and file any objections to it.  And

4   you'll have a chance to speak on your own behalf at

5   sentencing.  Okay?

6            **THE DEFENDANT:**  Yes, ma'am, Judge.

7            **THE COURT:**  Thank you.  All right.

8     (WHEREUPON, the defendant signed the plea.)

9     (WHEREUPON, court was adjourned at 10:58 AM)

10                          ***

11  I certify that the foregoing is a correct transcript from

12  the record of proceedings in the above-entitled matter.

13     s/Karen E. Martin              12/20/2024

14  _____     _____

     Karen E. Martin, RMR, CRR       Date

15

16

17

18

19

20

21

22

23

24

25